**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,      )
                                    )
           Plaintiff,          )
                                    )        **CRIMINAL ACTION**
v.                             )
                                    )        **No. 03-20192-CM**
                                    )
DEMETRIUS HARGROVE,       )
                                    )
           Defendant.      )
                                    )

## MEMORANDUM AND ORDER

On November 10, 2005, a jury found defendant Demetrius Hargrove guilty of four counts – murdering two persons, Elmer Berg and Misty Castor, while using and possessing a gun in furtherance of and during and in relation to a drug trafficking crime (Counts One and Two); murdering Tyrone Richards, a federal witness (Count Three); and conspiring to murder Shedrick Kimbrel, another federal witness (renamed Count Four after the court dismissed the original Count Four). The government sought the death penalty against defendant for the alleged murders of Mr. Berg, Ms. Castor, and Mr. Richards. On November 22, 2005, the jury found that defendant should receive life in prison rather than the death penalty on Counts One, Two, and Three. This matter comes before the court on two post-trial motions: Demetrius Hargrove's Post-Trial Motion for Judgment of Acquittal (Doc. 363) and Demetrius Hargrove's Motion for a New Trial (Doc. 364). The court has previously addressed all of the issues raised, but will briefly revisit them below.

**I.  Motion for Judgment of Acquittal**

In reviewing a motion for judgment of acquittal, the court views the evidence in the light most favorable to the government.  *United States v. Hughes*, 191 F.3d 1317, 1321 (10th Cir. 1999) (citation omitted).  The court must uphold the jury's guilty verdict if "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001) (emphasis in original) (quoting *United States v. Schluneger*, 184 F.3d 1154, 1158 (10th Cir. 1999)).  "The evidence necessary to support a verdict 'need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt.'"  *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (additional quotation marks and citations omitted).  The court considers both direct and circumstantial evidence, as well as reasonable inferences that can be drawn from that evidence.  *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir. 1993) (citation omitted).  An inference is "reasonable" if "logical and probabilistic reasoning" can lead to the conclusion.  *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citation omitted).  The court does not examine the evidence in "bits and pieces," but rather evaluates the sufficiency by "consider[ing] the collective inferences to be drawn from the evidence as a whole."  *United States v. Hooks*, 780 F.2d 1526, 1532 (10th Cir. 1986) (citation omitted).

A.  Lack of Federal Nexus with Regard to Counts One and Two

Defendant argues that the government failed to introduce evidence (1) that at the time Elmer Berg and Misty Castor were killed, the drug trafficking offense of possession with intent to distribute narcotics was in progress; and (2) of the weapon allegedly used in the murders.  Without such evidence, defendant contends, the government failed to establish a nexus to interstate commerce as required for a federal conviction.

-2-

The court finds that the government introduced sufficient evidence for the jury to find that defendant engaged in, or aided and abetted in, the drug trafficking offense of possession with intent to distribute narcotics.  There was substantial evidence in the trial that both Christopher Trotter and defendant were drug dealers.  The government introduced the transcript of Mr. Trotter's testimony during defendant's March 20, 2000 Wyandotte County preliminary hearing.  Mr. Trotter testified in that hearing that defendant called him in the middle of February 1998 and told him he had a "sale for some weight" set up.  Mr. Trotter testified that earlier that day, he and defendant had been trying to get rid of the rest of the drugs Mr. Trotter had so they could get another package together.  Mr. Trotter testified that when defendant arrived at his house, he (Mr. Trotter) got in the car, and *had cocaine with him*.  Because the cocaine was in weight, he told defendant that he didn't have a scale, and that they needed to go to Letonia Lockridge's house to "weigh it up."  Mr. Trotter then asked defendant what Elmer Berg was doing behind them, and defendant told Mr. Trotter that he was going to sell Mr. Berg the "quarter."  Mr. Trotter testified that he then figured out that it was Mr. Berg who was there to buy the weight.  It was only after Mr. Trotter told defendant that he "thought [defendant] wasn't going to [mess] with [Mr. Berg] anymore" that defendant told Mr. Trotter that he was "going to knock him."

This evidence is sufficient for a reasonable jury to find that *at least* Mr. Trotter was engaging in a drug trafficking crime – that is, possession of a controlled substance with intent to distribute – during the murder of Elmer Berg and Misty Castor.  Defendant was charged with aiding and abetting in the drug trafficking crime.  The court finds that the government presented sufficient evidence to establish the federal nexus required for a conviction under Counts One and Two.

Because of this finding, the court does not need to address defendant's argument that the government failed to present evidence of the gun involved in the murders.

-3-

B.  Failure to Plead Kind of Drug Purportedly Possessed with Intent to Distribute under Counts One and Two

The superseding indictment in this case does not allege the type or quantities of drugs involved in Counts One and Two.  Defendant asks the court to grant an acquittal on those counts because in cases involving allegations under 18 U.S.C. § 841, the Tenth Circuit has found it essential that the government allege in the indictment and prove beyond a reasonable doubt the type and quantity of drug that is purportedly involved in the case.  Defendant cites two Tenth Circuit cases in support of his position: *United States v. Jones*, 235 F.3d 1231, 1236-37 (10th Cir. 2000) and *United States v. Small*, 423 F.3d 1164, 1187 (10th Cir. 2005).

The cases defendant cites do not support the relief he requests here.  The cases both deal with the judge's role in sentencing and the requirement that the government allege in the indictment and prove any facts necessary to support a heightened maximum sentence.  Moreover, the *Jones* court even noted that the defendant was not challenging the sufficiency of the indictment, but rather the sentence itself.  235 F.3d at 1237.  Under § 841, the quantity of drugs is an essential element of the offense.  Here, the quantity is not an essential element of Counts One or Two because it will not impact defendant's sentence.  The court therefore did not constructively amend the indictment when it set forth cocaine and cocaine base as narcotic drugs in its instructions.

C.  Lack of Federal Nexus with Regard to Count Three

Defendant next argues that Count Three lacks a federal nexus because the government failed to introduce evidence that Tyrone Richards would have testified as a witness in *United States v. Christopher Trotter*, 98-20033-GTV.  According to defendant, the government never intended to call Mr. Richards as a witness against Christopher Trotter because Mr. Richards would have testified that he was not taken across state lines and that Mr. Trotter did not kidnap him.

The court finds that the government was not required to introduce evidence that Mr. Richards actually would have testified in Mr. Trotter's trial.  He was subpoenaed to testify at trial.  As the victim, he was a material witness to the events in question.  The relevant inquiry is whether defendant intended to prevent the government from being *able* to present him as a witness.  *Cf. United States v. Willard*, 230 F.3d 1093, 1095 (9th Cir. 2000) (holding that the proper focus is on the defendant's endeavor, not whether his actions actually prevented a witness from testifying (citation omitted)).  The government introduced sufficient evidence to suggest that was defendant's intent.

Defendant also suggests that the government presented insufficient evidence for the jury to conclude that defendant killed Mr. Richards.  Again, the court must uphold the jury's guilty verdict if "'***any*** rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Haber*, 251 F.3d at 887 (emphasis in original) (quoting *Schluneger*, 184 F.3d at 1158).  Viewing the evidence in the light most favorable to the government, the court finds that the jury's verdict was supported by the evidence, albeit circumstantial evidence.

## II.  Motion for a New Trial

In considering a motion for new trial, the court has broad discretion which will not be disturbed on appeal absent plain abuse of that discretion.  *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987).  The standards for granting a new trial are not as strict as the standards for granting judgment of acquittal. Federal Rule of Criminal Procedure 33 provides that a court may grant a new trial "if the interest of justice so requires."  Additionally, any error which would require reversal on appeal is a sufficient basis for granting a new trial.  *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (quotation and citation omitted).  But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).  The burden of proving that a

new trial is warranted rests on the defendant.  *Walters*, 89 F. Supp. 2d at 1213 (citations omitted).

A.  Refusal to Sustain Motion to Suppress Statement to Kansas City, Kansas Police

Defendant argues that the court should have suppressed his statement to the Kansas City, Kansas police because (1) officers took the statement without warning defendant of his rights to silence and to counsel; (2) a reasonable person in defendant's position would have thought that he was in custody during the interrogation; and (3) error in allowing the statements was not harmless, as evidenced by the lengthy deliberations of the jury.

The court held a hearing on defendant's motion to suppress, and considered exhibits submitted by the parties and testimony given by Letonia Torrence (formerly Letonia Lockridge) and retired Kansas City, Kansas police detective Michael Shomin.  The evidence showed that defendant appeared voluntarily at the police station and that the atmosphere at the police station was noncoercive.  The interview transcript also showed that the questioning was investigative, not accusatory, and that defendant never protested the questioning.  Finally, it appeared that defendant was allowed to leave after the interview.

As the court earlier held, "police officers are not required to administer *Miranda* warnings to everyone whom they question."  *United States v. Erving L.*, 147 F.3d 1240, 1246 (10th Cir. 1998) (citation omitted).  Rather, *Miranda* only applies when an individual is subject to custodial interrogation.  *Miranda v. Ariz.*, 384 U.S. 436, 439 (1966).  The court remains convinced that a reasonable person in defendant's position would have felt free to leave.  *See Fla. v. Royer*, 460 U.S. 491, 502 (1983) (citation omitted).  Defendant was not subject to custodial interrogation, and the court properly admitted his statement.

B.  Refusal to Sustain Motion to Suppress Statement to the FBI

Defendant next argues that the court erred in overruling defendant's motion to suppress and

continuing objections regarding a statement he gave to the FBI.  Specifically, defendant contends that (1) the FBI agents did not advise defendant of his rights to silence and assistance before his interrogation; (2) defendant was in custody during the interrogation; and (3) the error in receiving the statements was not harmless, as evidenced by the lengthy deliberations of the jury.

The court concludes that its prior ruling was correct.  Although the report of FBI agent Jerry Wiley does not reflect that he advised defendant of his rights to silence and counsel, an Advice of Rights form indicates that defendant was advised of his rights at 5:15.  The form also indicates that defendant "[r]efused to sign but agreed to tell his side."  The form was witnessed by two law enforcement officers.  The court heard testimony on this issue and finds credible the testimony of Agent Wiley that defendant willingly and knowingly agreed to "tell his side" of the story.

C.  Refusal to Sustain Motion to Suppress CCA Recordings

Defendant next argues that the court should have suppressed recordings made of his telephone calls while he was detained at CCA.  The federal wiretapping statutes prohibit the unauthorized interception of "any wire, oral, or electronic communication."  18 U.S.C. § 2511(1)(a).  Illegally intercepted communications may not be used as evidence in a trial.  *Id.* § 2515.  Under the consent exception to the wiretapping provisions, however, it is lawful to intercept a communication where the party has given prior consent to such interception.  *Id.* § 2511(c) and (d).

The government produced evidence that, at the time the phone calls took place, defendant was aware that his conversations were being recorded.  Specifically, Sandra Elliot testified that an inmate is informed during orientation that his phone calls are subject to recording; that CCA's inmate handbook notifies inmates that telephone conversations may be recorded; and that CCA officials have placed a sign above the telephones informing inmates that calls are subject to monitoring.  Special Agent Jeffrey Harris testified that, at the outset of a telephone call, the operator states that the

-7-

conversation is subject to monitoring and recording.  Special Agent Harris also testified regarding

defendant's own statements about his awareness that his phone calls were being recorded.  Based on

this evidence, the court finds that it correctly held that defendant consented to CCA recording his

phone calls.  *See United States v. Hammond*, 286 F.3d 189, 192 (10th Cir. 2002) (finding that the

defendant consented because he was notified of recording and still used the telephone); *United States*

*v. Kalyvas*, 1997 WL 651761, at \*6 (10th Cir. Oct. 21, 1997) (affirming district court, which held that

the defendant consented where penal institution gave inmates notice that personal calls could be

monitored and recorded); *United States v. Faulkner*, 323 F. Supp. 2d 1111, 1117-18 (D. Kan. 2004)

(citing additional cases).

D.  Permitting Use of Christopher Trotter's Testimony

Defendant contends that the court erred in admitting as evidence the testimony of Christopher

Trotter at the Wyandotte County preliminary hearing.  Defendant argues that at the state court

preliminary hearing, defendant was not afforded a full and fair opportunity to cross-examine Mr.

Trotter, particularly in light of his lack of complete discovery and investigation, as well as strategies

inherent in preliminary hearings.

The court finds that the evidence was admissible under the "unavailable witness" exception to

the hearsay rule.  *See* Fed. R. Evid. 804(b)(1).  Mr. Trotter was unavailable because he invoked the

5th Amendment.  He previously testified at defendant's Wyandotte County preliminary hearing, and

at that hearing, defendant was afforded a full and fair opportunity to cross-examine Trotter.

Defendant's counsel at the preliminary hearing, Ron Evans, had been involved in dozens of death

penalty cases at the time of the hearing and had tried ten death penalty cases.  Mr. Evans cross-

examined Mr. Trotter at length, even inquiring into payments Mr. Trotter had received from the

government.  Importantly, defendant had a similar motive to develop the testimony because he was

facing the same charge – capital murder – involving the same victims – Elmer Berg and Misty

Castor.  The mere fact that defendant lacked some of the tools which were later developed by the

government or by defendant himself, which would have allowed him to better cross-examine Mr.

Trotter, does not mean that defendant lacked the opportunity to cross-examine Mr. Trotter.  *See*

*United States v. Koon*, 34 F.3d 1416, 1427 (9th Cir. 1994).

The court also finds that admission of the evidence did not violate the Confrontation Clause.

The Confrontation Clause requires an opportunity for cross-examination before testimonial hearsay

may be admitted against defendant under *Crawford v. Washington*, 541 U.S. 36, 59 (2004).  Despite

the fact that defendant discovered additional information later which would have provided him with

the ability to make a more effective cross-examination, he still had and utilized the opportunity to

cross-examine Mr. Trotter at the time of the preliminary hearing.  Defendant further had an

opportunity at trial in this case to impeach Mr. Trotter's credibility with evidence discovered

subsequent to the preliminary hearing.

E.  Permitting Testimony Regarding Gun Found in Storm Sewer

Defendant claims that the court erred in permitting testimony and evidence regarding the gun

found in a storm sewer.  According to defendant, there was no way to associate the gun with the

killing of Misty Castor, Elmer Berg, or Tyrone Richards.

The court finds that there was sufficient circumstantial evidence connecting the gun to the

murder of Mr. Richards, such that evidence of the gun was admissible.  Defendant's arguments go to

the weight of the evidence, not the admissibility.  The evidence was properly admitted at trial.

F.  Refusal to Grant Adequate Relief in Dealing with Mental Health Issues Raised in the Testimony
of Government Witness Micaela Cross (a.k.a. Micaela Graham)

Micaela Cross, a government witness at trial, testified that she had been treated by a

psychiatrist and had "visitings" from Elmer Berg and Misty Castor.  Defendant asked the court to either strike her testimony or allow defendant to inform the jury that Ms. Cross had refused defendant's requests for her mental health records and a mental evaluation.  Defendant believes that in denying his requests, the court prohibited adequate cross-examination of Ms. Cross.

Defendant wanted the court to place Ms. Cross under oath and allow defendant to ask her, while on the witness stand, the name of her treating psychiatrist and whether she would submit to a psychiatric exam.  The court found that this was not a proper function of the court.  The court declined to become involved in the matter at least in part, because of issues of witness privacy, but also because it would be facilitating discovery.  Defendant had an opportunity to cross-examine Ms. Cross about her "visitings," and used that opportunity.  Moreover, the court observed Ms. Cross on the witness stand, and did not observe any acts or mannerisms suggesting that Ms. Cross suffered from any mental infirmity affecting her competency to testify at trial.  The court finds that its rulings regarding Ms. Cross's testimony were proper.

G.  Refusal to Grant Judicial Use Immunity to Witness Richard Banks

At trial, defendant asked the court to grant Richard Banks use immunity for testifying at trial. In support, defendant cited several cases, including *Government of the Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980).  The court asked defense counsel if he had any argument that the recent Tenth Circuit case of *United States v. Serrano*, 406 F.3d 1208 (10th Cir. 2005) was distinguishable from the case before the court.  *Serrano* specifically rejected the Third Circuit *Smith* case and held that courts have no inherent authority to grant use immunity to a witness.  406 F.3d at 1217-18. Defense counsel was unable to distinguish *Serrano*, and the court finds that it dictates the court's ruling here.  For the reasons stated in *Serrano*, the court finds that its decision not to grant Richard Banks use immunity in the absence of a request from the government was appropriate.

H.  Refusal to Grant Severance of Counts

Defendant argues that the evidence supporting each of Counts One, Two, and Three was weak, and that joining the Counts violated defendant's right to due process of law.  The Federal Rules of Criminal Procedure allow joinder of offenses which are of the "same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).  Rule 8 is construed broadly "to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997).  Rule 14(a) allows a court to sever counts and hold separate trials if joinder of offenses "appears to prejudice" a defendant.  The defendant, however, bears a "heavy burden of showing real prejudice." *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993) (citation omitted).  Severance is not required simply because a defendant might potentially be prejudiced by the "cumulative effect of evidence of similar misconduct." *United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992).  Rather, the defendant must show actual prejudice. *United States v. Cardall*, 885 F.2d 656, 667-68 (10th Cir. 1989).

The government's theory of this case was that the murders of Elmer Berg and Misty Castor precipitated the murder of Tyrone Richards and the conspiracy to murder Shedrick Kimbrel.  The offenses are based on acts or transactions that are connected or constitute parts of a common scheme.  Evidence regarding the deaths of Mr. Berg and Ms. Castor likely would have been admissible in a separate trial for the murder of Mr. Richards to demonstrate defendant's motive and intent in killing Mr. Richards.  Likewise, evidence of the kidnapping of Mr. Richards likely would have been admissible in a separate trial for conspiring to murder Mr. Kimbrel, again for the purpose of demonstrating motive and intent, as well as plan and preparation.  "Where evidence that a defendant had committed one crime would be probative and thus admissible at the defendant's separate trial for

-11-

another crime, the defendant does not suffer any additional prejudice if the two crimes are tried together." *United States v. Rock*, 282 F.3d 548 (8th Cir. 2001) (quotation and citation omitted). Moreover, defendant has failed to demonstrate, and the court finds no indication in the record, that the jury could not and did not compartmentalize the evidence presented at trial.  *See Lucero v. Kerby*, 133 F.3d 1299, 1315-16 (10th Cir. 1998).  The court finds that it appropriately denied defendant's motion to sever the counts.

**IT IS THEREFORE ORDERED** that Demetrius Hargrove's Post-Trial Motion for Judgment of Acquittal (Doc. 363) and Demetrius Hargrove's Motion for a New Trial (Doc. 364) are denied.

Dated this 10th day of April 2006, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**