## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) Case Nos. | 03-20192-CM (Criminal) |
| v. ) | 12-2180-CM (Civil) |
| ) | |
| **DEMETRIUS R. HARGROVE,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

This case is before the court on defendant Demetrius R. Hargrove's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 432). Defendant raises several claims of ineffective assistance of counsel, including that counsel was ineffective for failure to move for dismissal of Counts One and Two, failure to properly cross-examine witnesses, and failure to adequately use expert witnesses. Defendant has failed to show that his counsel's actions were objectively unreasonable. But, even if the court found counsel's actions were unreasonable, defendant was not prejudiced because defendant has not shown that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. The government provided many witnesses and substantial evidence which, even had certain testimony been disregarded, could still have led a reasonable jury to find defendant guilty of the crimes charged. Defendant is not entitled to habeas relief.

## I. Factual Background

On February 19, 1998, police found the bodies of Elmer Berg and Misty Castor in Berg's car in a park in Kansas City, Kansas. Both were shot twice from close range. Castor was three months pregnant when she died. At trial, Shawn Wright testified that Berg was approximately $500–$600 in debt to defendant because defendant fronted Berg crack cocaine. Wright was also in drug debt, and he testified that defendant had threatened his life if he did not pay for the drugs. In addition, Clarence Burnett testified that while both defendant and Burnett were imprisoned, defendant gave detailed information about the double murder. According to Burnett, defendant wanted revenge against Christopher Trotter for testifying against him in a preliminary hearing. Defendant was planning on implicating Trotter for the double murder by writing letters in Trotter's name, describing the murders in detail.

Defendant's girlfriend, Micaela Graham, testified that on the day of the double murder, she drove with defendant to Trotter's house and stayed in the house while Trotter and defendant left with her car. Later that day, she overheard defendant speaking with Trotter about going to a club as an alibi. She also testified that defendant said that he kept giving Berg more and more chances. According to Graham, defendant also mentioned to her that he was sorry about Castor, and that Berg should not have brought her with him. Graham agreed to testify against defendant because she claimed that Castor's and Berg's spirits kept visiting her at night. Graham admitted to having anxiety disorders and taking medication for them.

After Berg and Castor were murdered, Tyrone Richards began telling people that he believed that defendant committed the murders. Joshua Hunt testified that defendant and Trotter were hiding in the bushes, waiting for Richards as Hunt and Richards arrived at Hunt's house. Defendant and Trotter finally caught Richards at his mother's house. After picking up Richards, defendant and Trotter were

-2-

pulled over by police.  Trotter was arrested, but defendant was not.  Both defendant and Trotter were charged with kidnapping Richards, who was to testify at that trial.

Richards was found shot to death in the back of his car in Kansas City, Kansas.  His hands and feet were bound by duct tape and telephone cords.  Gertrude Jones testified to witnessing defendant, identified as "Diamond," accost Richards at gunpoint.  She said that she saw defendant force Richards into the basement.  When originally questioned by police, Jones lied, citing fear for her and her children's safety.  She also admitted she had been on drugs in violation of her probation agreement.  Defendant's counsel also noted discrepancies between the hairstyle of the person Jones described and the hairstyle of defendant.

Maurice Peters, Trotter's cousin, testified that defendant wanted him to kill a federal witness, Shedrick Kimbrell.  Instead of shooting Kimbrell, Peters pretended to pull the trigger.  Peters told defendant that the gun got jammed.

## II. Procedural History

A grand jury charged defendant with a superseding five-count indictment.  Count One was the premeditated murder of Elmer Berg through the use of a firearm in violation of 18 U.S.C. § 924(j)(1) and § 1111.  Count Two was identical to Count One, but involved the premeditated murder of Misty Castor.  Count Three was the premeditated murder of Tyrone Richards with the intent to prevent him from attending and testifying at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A).  Count Four was aiding and abetting the attempted premeditated murder of Shedrick Kimbrell with the intent to prevent him from attending and testifying at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A).  Count Five was conspiracy to commit the premeditated murder of Kimbrell with the intent to prevent him from attending and testifying at an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A) and § 371.

Defendant pleaded not guilty to all charges and proceeded to a twenty-one day jury trial. Before trial, defendant filed a motion in limine regarding Trotter's testimony at the preliminary hearing. Defendant sought to prevent the government from reading the transcript of the testimony into evidence. The court denied the motion, concluding that the admission would not violate defendant's rights under the Confrontation Clause of the Sixth Amendment. During trial, defendant also filed multiple motions relating to Graham's testimony. He requested that Graham produce her mental health records and moved to strike Graham's testimony. The court denied both requests.

At the close of evidence, the court dismissed Count Four. The government requested the death penalty should defendant be found guilty of Counts One, Two, or Three. The jury found defendant guilty of Counts One, Two, Three, and Five and found the defendant should be sentenced to life imprisonment on Counts One, Two, and Three, and sixty months on Count Five. All of the sentences were to run concurrently.

Defendant appealed to the Tenth Circuit. He raised four issues on appeal: (1) the court erred in allowing the testimony of Micaela Graham without a mental examination; (2) the court erred in permitting the use of the state court preliminary hearing testimony from Christopher Trotter; (3) the court erred in permitting evidence regarding a handgun found in a storm drain; and (4) the court erred in refusing to dismiss Counts One and Two. The Tenth Circuit affirmed the District Court's rulings. Defendant then filed the instant pro se motion under 28 U.S.C. § 2255.

**III. Legal Standard**

28 U.S.C. § 2255 allows "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise

-4-

subject to collateral attack [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." Not every asserted error of law can be raised in a § 2255 motion. *Davis v. United States*, 417 U.S. 333, 346 (1974). The appropriate inquiry is whether the claimed error of law was a "fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). The court also looks at whether the motion presents exceptional circumstances, making the need for the remedy is apparent. *See id.*

Section 2255 motions are not available to test the legality of matters that should have been raised on direct appeal. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994) (citing *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)). A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains or can show that a fundamental miscarriage of justice will occur if his claim is not addressed. *Id*. In addition, issues that have been previously considered and disposed of on direct appeal are barred from a § 2255 motion. *Id*. at 291.

The court must hold an evidentiary hearing unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief. *United States v. Galloway*, 56 F.3d 1239, 1240 n.1 (10th Cir. 1995). The burden is with the defendant to allege facts that, if proven, would entitle him or her to relief. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995). The allegations must be specific and particularized, not general or conclusory. *Id.* The court is not required to fashion defendant's arguments for him where his allegations are merely conclusory in nature and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).

**IV. <u>Analysis</u>**

    **A.  Ground One**

Defendant contends that his trial counsel was ineffective for failing to move for a dismissal of Counts One and Two of the indictment. Defendant argues that Counts One and Two, violations of 18 U.S.C. § 924(j), rely on 18 U.S.C. § 924(c) and 21 U.S.C. § 841—both of which have five-year statutes of limitations. Defendant claims that counsel was ineffective for failing to get the counts dismissed because they are barred by the applicable statute of limitations.

To prove ineffective assistance of counsel, defendant must show that (1) counsel's representation fell below objective standards of reasonableness and (2) counsel's deficient performance prejudiced defendant. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case. *Id.* Judicial scrutiny of counsel's performance is highly deferential. *Id.* In addition, counsel's performance must have been completely unreasonable—not merely wrong. *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). To show prejudice, the defendant is required to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 669.

Congress has not imposed a statute of limitations on the prosecution of crimes that are punishable by death. 18 U.S.C. § 3281 (stating that "[a]n indictment for any offense punishable by death may be found at any time without limitation"). Non-capital offenses have a five-year statute of limitations. 18 U.S.C. § 3282(a) (stating that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is

found or the information is instituted within five years next after such offense shall have been committed").

The government does not contest that it was legally precluded from charging defendant with a drug trafficking charge under 21 U.S.C. § 841 or a firearm charge under 18 U.S.C. § 924(c). The murders of Berg and Castor took place on February 18, 1998, and Hargrove was not charged until December 10, 2003. This surpasses the five-year statute of limitations. Defendant, however, was charged under 18 U.S.C. § 924(j) instead of these statutes. Section 924(j) reads:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—
> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life; and
> if the killing is manslaughter (as defined in section 1112), be punished as provided in that section.

Because this crime is potentially punishable by death, § 924(j) has no statute of limitations. 18 U.S.C. § 3281. Defendant claims "since [§] 924(j) does not set forth a discrete crime and it does not apply unless the government presents evidence demonstrating a violation of 18 U.S.C.S. § 942(c), the '*evidence*' relied [on] by the government during the trial must be within the statute of limitations." (Doc. 433 at 22 (emphasis in original).) Defendant's claims are unsupported. He cites no case law, but rather makes an inference that because a § 924(j) violation cannot occur without a § 924(c) violation, any evidence used in the § 924(j) violation must be within the § 924(c) statute of limitations. This would directly undermine the purpose of § 924(j).

Section 924(j) does not set forth a discrete crime. *United States v. Battle*, 289 F.3d 661, 667 (10th Cir. 2002); *see also United States v. Korey*, 614 F. Supp. 2d 573, 584 (W.D. Penn. 2009). But this fact does not mean that it is subject to the five-year statute of limitations of § 924(c). Rather, § 924(j) increases the punishment of § 924(c) and disposes of the statute of limitations. *See United States v. Dames*, No. 04 CR. 1247 PAC, 2007 WL 1032257, at *1 (S.D.N.Y. Mar. 30, 2007) (holding

that the § 924(j) offense was not subject to a statute of limitations—regardless of whether the underlying narcotics conspiracy would be time-barred if separately charged); *United States v. Guerrero*, 882 F. Supp. 2d 463, 495–96 (S.D.N.Y. 2011) (indicating that the fact that a five-year statute of limitations had run on underlying narcotics conspiracy, which was an element of charged offense of drug-gang-related murder, did not render defective defendant's conviction for drug-gang-related murder). Similarly, courts have found defendants guilty of felony murder even if the statute of limitations has run on the predicate felony. *See Terrell v. Howes*, No. 1:08-cv-179, 2011 WL 995962, at *5 (W.D. Mich. Mar. 1, 2011) (citing the Michigan Court of Appeals to hold that the running of the statute of limitations of a predicate felony does not bar prosecution for felony murder and noting that a contrary position would directly contravene legislative intent).

Defense counsel was not ineffective because they[1] neither acted unreasonably nor prejudiced defendant. Counsel did not act unreasonably in failing to move for dismissal of Counts One and Two because these counts were not beyond the statute of limitations. Defendant was also not prejudiced. As explained above, any such argument would have been unavailing. Defendant cannot show that, absent counsel's alleged error, the result of the proceedings would have been different.

**B. Ground Two**

Defendant next argues that counsel was ineffective because they "failed to utilize available court funds to request and present expert testimony on how witness Graham's mental status affected her testimony." (Doc. 433 at 26.) Defendant states that "[h]ad counsel requested the additional funds and had . . . an expert testify as to why a witness would change her story after having 'spiritual visitations from the victims,' the mental health issues that witness Graham was actually suffering, there is a 'reasonable probability' the end result of the proceedings would have been different." (*Id.* at 28.)

---

[1] Because this case was a potential death penalty case, defendant was represented by two attorneys. They shared responsibilities at trial.

To prevail on a claim of failure to secure expert testimony, defendant must show how calling expert witnesses would have bolstered his defense, refraining from pure speculation. *Boyle v. McKune*, 544 F.3d 1132, 1138 (10th Cir. 2008) (stating that defendant failed to show that medical experts could have reached a conclusion regarding consent contrary to the conclusions reached by the nurses and supplied no evidence or convincing argument that medical testimony could support his claim); *Waterhouse v. Hatch*, 498 F. App'x 811, 813 (10th Cir. 2012) (holding that counsel's failure to secure expert testimony was not prejudicial because the potential value of the expert testimony was speculative) (citing *Boyle*, 533 F.3d at 1138–39); *United States v. Smith*, 421 F. App'x 889, 900 (10th Cir. 2011) (indicating that whether modified testimony would have increased chances of acquittal was speculative and insufficient to show prejudice) (citing *Boyle*, 544 F.3d at 1140).

The choice of which witnesses to call is one for counsel—a "classic tactical decision." *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (citing *Boyle*, 544 F.3d at 1139); *see also Durbin v. Province*, 448 F. App'x 785, 789 (10th Cir. 2011) (holding that counsel's decision not to call certain witnesses was not unreasonable and did not prejudice defendant); *Tolbert v. Ulibarri*, 325 F. App'x 662, 665 (10th Cir. 2009) (finding it was "within the wide range of permissible trial strategy to focus on the weaknesses in the state's evidence rather than call an additional expert witness"). Often, the speculative witness is a "two-edged sword." *Boyle*, 544 F.3d at 1138–39. Speculation goes both ways: one can speculate about favorable testimony as well as unfavorable testimony. *Id.* ("'[I]t is at least as reasonable, and maybe more so, to speculate that the testimony of those witnesses would have damaged defendant's case.'") (quoting *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986)).

Defendant's assertion that there is a reasonable probability that the end result of the proceedings would have been different had his counsel retained an expert witness is speculative. True, an expert witness may have helped his case. But it is just as likely that an expert witness could have

-9-

hurt his case. Counsel's decision not to retain an expert witness is a tactical decision—one that is virtually unchallengeable. Counsel cross-examined the witness. (Doc. 417 at 153–234.) Instead of getting an expert witness, defense counsel chose to attack the witness's credibility by pointing out times she had previously been untruthful. (*Id.* at 162–67.) Counsel played a recording of a conversation he had with Graham in the presence of a court reporter, in which she denied defendant's involvement in the murders. (*Id.* at 187–88.) He also brought up the anxiety disorder, but did not pursue it as an impeachment device. (*Id.* at 209.) Defendant presents no facts that would support his counsel's decision as being anything but strategic. For these reasons, defendant cannot show that counsel's performance was deficient.

Defendant also fails to prove prejudice. Even if counsel retained an expert witness, defendant has failed to show that there is a reasonable probability that the results of the proceeding would be different. Defendant has neither shown that the jury would discredit Graham's testimony nor taken into account the other witnesses and evidence that the government had against him. Defendant is not entitled to relief on Ground Two.

### C. Ground Three

Defendant next argues that counsel was ineffective when they "failed to thoroughly cross examine witness Graham in greater detail about her spiritual visitations." (Doc. 433 at 29.) Defendant claims that further inquiry into Graham's "mental illness" could have led the jury to disregard her testimony with or without the court's order striking her testimony.

Failing to cross-examine a witness does not automatically equate to ineffective assistance of counsel. *United States v. Voight*, 877 F.2d 1465, 1468 (10th Cir. 1989). In particular, the court does not have to find ineffective assistance where the defendant fails to show how cross-examination might have changed the trial outcome and the decision could have been strategic. *Id.*; *United States v. Miller*,

907 F.2d 994, 1002 (10th Cir. 1990) (holding that defendant failed to carry his burden that counsel's failure to cross-examine a witness was not trial counsel's strategy); *Moss v. Hofbauer*, 286 F.3d 851, 861–62 (6th Cir. 2002) (holding that counsel was not ineffective because petitioner's claim was based upon "supposition as to what cross-examination might have revealed"). *Moss* notes that counsel's decision not to cross-examine was "within the wide range of reasonable professional assistance . . . and virtually unchallengeable because she made it after considering the relevant law and facts." 286 F.3d at 864 (quoting *Strickland*, 466 U.S. at 689, 690) (internal quotation marks omitted). Counsel does not act constitutionally ineffectively when he conducts a thorough and meaningful cross-examination, but elects not to use trial strategy that—in hindsight—might have been more effective. *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (citing *Cardwell v. Netherland*, 971 F. Supp. 997, 1019 (E.D. Va. 1997)).

Defense counsel's decision not to inquire more into Graham's mental health does not constitute ineffective assistance of counsel. Counsel cross-examined Graham and asked her if she had been diagnosed with any mental health condition. (Doc. 417 at 209.) Graham responded that she suffered from an anxiety disorder. (*Id*.) Counsel asked if she had been treated for that anxiety disorder. (*Id*.) Graham responded she was on medication. (*Id*.) Upon defense counsel's conclusion of his original cross-examination, government counsel asked how long Graham suffered from the anxiety disorder. (*Id.* at 226.) Graham explained that she had been on medication for more than seven years, ever since "this incident with Elmer Berg and Misty Castor." (*Id*.) She further explained that she was on Klonopin, which she described as a "non-addictive form of Xanax" which "[s]lows down the physical symptoms of the anxiety attack." (*Id.* at 227.) Defense counsel took the opportunity to re-cross, but decided to ask questions about her whereabouts and other elements of her testimony. (*Id.* at 229–31.)

-11-

Defense counsel brought up the anxiety disorder on cross-examination, but chose not to pursue it. As the Tenth Circuit stated in defendant's appeal, "We have not discovered a single case in which a witness' credibility was called into question on account of an anxiety disorder." *United States v. Hargrove*, 382 F. App'x 765, 776 (10th Cir. 2010) (citing *United States v. Butt*, 955 F.2d 77, 82–83 (1st Cir. 1992) , which noted that "federal courts appear to have found mental instability relevant to credibility only where, during the timeframe of the events testified to, the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness . . . that dramatically impaired her ability to perceive and tell the truth") (additional citation omitted)). Defendant fails to carry his burden to show that his counsel's actions were not trial strategy. Defendant's claim that "the jury could have given zero [credibility] to Graham's testimony" is conclusory and simply speculates what information cross-examination could bring. Defense counsel did not act unreasonably by declining to further inquire into Graham's mental health.

**D. Ground Four**

Defendant next argues that trial counsel was ineffective when they "failed to object as a Fifth Amendment violation when the district court refused to compel witness Graham to release her psychiatric records." (Doc. 433 at 31.) Defendant tried to raise the Fifth Amendment issue on appeal, but the Tenth Circuit found the argument was waived because it was not made to the trial court. Defendant relies heavily on *United States v. Robinson* in his argument that counsel should have objected to the Fifth Amendment violation.

The court in *United States v. Robinson* held that the district court violated the Fifth Amendment when it refused to allow Robinson access to the contents of a confidential informant's mental health records. 583 F.3d 1265, 1270–74 (10th Cir. 2004). The court also violated the Confrontation Clause of the Sixth Amendment when it refused to allow cross-examination of the confidential informant. *Id.*

at 1274–76. The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. In keeping with notions of due process, if information is non-privileged and material, it must be disclosed to the defense. *Robinson*, 583 F.3d at 1270 (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 60 (1987)). "[E]vidence is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Ritchie*, 480 U.S. at 57).

Defendant argues that *Robinson* reached the conclusion that it is a "Fifth Amendment violation to refuse to permit the inspection of the witness's mental health records." (Doc. 433 at 32 (emphasis omitted).) But the court's holding only applies to a limited number of cases with similar operative facts. As the government points out, *Robinson* is distinguishable from the facts in this case. In *Robinson*, the confidential informant alone testified directly to Robinson's possession; no other witness gave this critical testimony. 583 F.3d at 1271. The court stated that "it is not a stretch to say that the guilty verdict in this case depended on the CI's testimony." *Id.* The confidential informant's credibility, therefore, was of chief concern. *Id.* Here, the government presented fifty-two witnesses. Unlike in *Robinson*, there were many other witnesses who testified to defendant's guilt. Also, the government presented evidence in which defendant provided specific details of the murders of Berg and Castor. Even if Graham produced her mental health records, defendant has not shown that there is a reasonable probability that the results of the proceeding would be different. Because the government had a number of other witnesses and evidence, Graham's mental health was not of chief concern as it was in *Robinson*. Counsel's decision not to challenge the court's ruling on a Fifth Amendment basis was not unreasonable.

-13-

Also, the confidential informant in *Robinson* reported abuse of Valium, Klonopin, Darvocet, and Hydrocodone. 583 F.3d at 1272. He had been diagnosed with "poly-substance abuse, mood disorder with an Axis II, temporary, for anti-social traits." *Id.* at 1268. He also had a long history of mental illness that included auditory hallucinations and seeing "things out the window that are not really there." *Id.* at 1272. The substantial amount of information in the confidential informant's mental health records could have undermined the informant's credibility. On the appeal of defendant's case, the Tenth Circuit stated that an anxiety disorder was no reason to question the credibility of a witness. *Hargrove*, 382 F. App'x at 776. The factors that potentially affected Graham's credibility were not as substantial as they were in *Robinson*.

Another factor differentiating *Robinson* from this case is that in *Robinson*, the district court forbade Robinson from cross-examining the CI on his mental health history altogether. 583 F.3d at 1274. Without cross-examination as an option, access to mental health records became more essential to Robinson's case. Here, the district court allowed cross-examination with regard to Graham's mental health. Defense counsel elected not to pursue that route. Because counsel's actions were reasonable and because there is no reasonable probability that the results would have been different had defendant had access to Graham's psychiatric records, defense counsel was not ineffective for failing to object to a Fifth Amendment violation.

### E. Ground Five

Defendant next argues that counsel was ineffective when "he failed to properly cross examine witness Trotter at the state's preliminary hearing in preparation for trial at the state level which would have been beneficial at the federal prosecution." (Doc. 433 at 34.)

Once again, the failure to cross-examine a witness does not necessitate a finding of ineffective assistance of counsel. *United States v. Voigt*, 877 F.2d 1465, 1468 (10th Cir. 1989). In particular, it

does not necessitate a finding of ineffective assistance of counsel where defendant has not shown how cross-examination might have changed trial outcome and the decision could simply have been part of trial counsel's strategy. *Id.*

Defendant has not shown how further cross-examination would have benefitted his defense. He also does not demonstrate how counsel was deficient, but rather relies on conclusory statements such as "counsel's lack of preparation" and "counsel's failure to proper[ly] and thoroughly cross examine," without attaching supporting facts. (Doc. 433 at 35.) In addition, defendant filed a motion in limine to suppress the transcript of Trotter's testimony. (Doc. 223.) Defendant stated:

> While Mr. Hargrove and his State Public Defender were present during that preliminary hearing, and while the Public Defender was permitted to ask a limited number of questions of Mr. Trotter, the Public Defender was specifically prohibited from full cross-examination of Mr. Trotter. Moreover, at this early stage of the State Court proceedings, the Public Defender had not received discovery or conducted investigation. Consequently, the Public Defender did not know about, and thus could not confront Mr. Trotter about, various facts. . . .

(*Id.* at 2 (quotations omitted).)

Defendant's counsel at the preliminary hearing cannot be found ineffective for his cross-examination when (1) according to defendant, his counsel was prohibited from full cross-examination and (2) it occurred before discovery was completed. Furthermore, before trial, defendant challenged the court's decision to admit the transcript, suggesting that the cross-examination was incomplete. The Tenth Circuit upheld the trial court's decision, noting

> Under Kansas law, "[t]he defendant has the right to cross-examine witnesses against him and introduce evidence on his behalf [at the preliminary examination]." *State v. Jones*, 223 Kan. 170, 660 P.2d 965, 968 (1983) (citation omitted). Hargrove had the right and he exercised that right. . . . Here, the district court reviewed the transcript of Trotter's testimony at Hargrove's preliminary hearing and noted Hargrove's state court counsel "cross-examined Mr. Trotter at length. . . ."

*Hargrove*, 382 F. App'x at 779.

-15-

The Tenth Circuit also agreed with the district court's assessment that "[t]he mere fact that [Hargrove] lacked some of the tools which were later developed by the government or by [Hargrove] himself which would have allowed him to more thoroughly cross-examine Mr. Trotter does not mean that [Hargrove] lacked the opportunity to cross-examine Mr. Trotter." *Id.* at 779–80. There is nothing in the record to suggest that counsel's actions at the preliminary hearing were unreasonable or that defendant was prejudiced by those actions. The court therefore denies relief on Ground Five.

**F. Ground Six**

Defendant next claims that counsel was ineffective when "he failed to request the services of an expert witness on identification since he knew that witness Jones had only 'briefly' seen the assailant of [Richards] and quite possibly misidentified Hargrove." (Doc. 433 at 36.) Defendant cites several studies describing the unreliability of identification of strangers and other shortcomings of eyewitness identification.

Again, to prevail on a claim of failure to secure expert testimony, defendant must show how calling expert witnesses would have bolstered his defense and refrain from pure speculation. *Boyle*, 544 F.3d at 1138. The choice of which witnesses to call is left to counsel as a tactical decision. *Chapman*, 593 F.3d at 369 (citation omitted).

Upon cross-examination, defendant immediately questioned Jones's identification of defendant. (Doc. 409 at 127.) He pointed out the discrepancies in hairstyle, that Jones had previously lied to police and changed her stories multiple times, and that Jones had been under the influence of drugs in violation of her probation. *(Id.* at 127, 133–34, 137–38.) Counsel strategically attacked Jones's testimony without using an expert witness. To constitute ineffective assistance of counsel, counsel's performance must not just be wrong, but completely unreasonable. Counsel did not act

-16-

unreasonably in deciding not to offer an expert witness to testify to the unreliability of eyewitness testimony.

Defendant emphasizes in his response that his position is that counsel erred in failing to secure an expert witness at all—not just that counsel failed to call an expert at trial. This distinction does not change the court's analysis. Defendant still has still not created a question of whether counsel's performance was objectively unreasonable.

Defendant also cannot show prejudice. The jury found defendant guilty of the premeditated murder of Tyrone Richards while taking into account counsel's cross-examination of Jones. Any attempt by defendant to predict what the expert witness would say and how the jury would react to it is speculative. As such, defendant fails the second prong of *Strickland* as well.

### G. Ground Seven

Defendant's final argument is that the cumulative impact of trial counsel's errors require an evidentiary hearing. Defendant relies on *United States v. Fernandez*, which states that "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect." 145 F.3d 59, 66 (1st Cir. 1998).

True to its name, cumulative error analysis considers the effect of errors—not of nonerrors. *Trujillo v. Ploughe*, 475 F. App'x 261, 272 (10th Cir. 2012) (citations omitted). In assessing the errors' cumulative effect, the court is to consider the entire record, "paying particular weight to factors such as the nature and number of errors committed; their interrelationship, if any, and combined effect; how the district court dealt with the errors as they arose . . . and the strength of the government's case." *Fernandez*, 145 F.3d at 66 (quoting *United States v. Sepulveda*, 15 F.3d 1161, 1195–96 (1st Cir. 1993)) (internal quotation marks omitted). The court also considers the trial's length. *Id.* A shorter trial offers greater opportunity for impact. *Id.*

-17-

Defendant has been unable to show error in any of his grounds for relief. Even if the court were to consider counsel's actions as error, when taking into consideration the strength of the government's case and the length of the trial, those errors—analyzed cumulatively—still do not merit an evidentiary hearing.

## V. <u>Conclusion</u>

Defendant fails to adequately assert ineffective assistance of counsel. There is nothing in the record to suggest that counsel's actions were objectively unreasonable. Defendant was also not prejudiced by counsel. He has not presented facts to show that, but for counsel's actions, the results of the proceeding would have been different.

This conclusion is consistent with the court's recollection of counsel's performance at trial. Counsel filed countless motions on defendant's behalf—before, during, and after trial. Counsel made solid legal arguments and meaningfully cross-examined the government's witnesses and presented defense witnesses. Counsel made relevant and necessary objections, was thoroughly prepared each day, and eloquently argued trial issues. At its conclusion, the jury deliberated for over three full days. The court has no doubt that counsel represented defendant ably and effectively. The individualized errors that defendant alleges here represented small portions of a lengthy, involved trial. None of the alleged errors—even if they were errors, and errors of constitutional magnitude at that—had the power to outweigh all of the other evidence presented. This court is fully convinced that defendant's constitutional right to effective assistance was not violated in any way.

The record before the court conclusively shows that defendant is not entitled to relief. Accordingly, no evidentiary hearing is required. *See United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988) (holding that no hearing is required where factual matters raised by a § 2255 petition may be resolved on the record). The court denies defendant's § 2255 motion in its entirety.

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings state that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *United States v. Ivory*, No. 09-2376-KHV, 2010 WL 1816247, at *1 (D. Kan. May 3, 2010). The court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. *Id.* Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.* The court finds that defendant has not made a substantial showing of the denial of a constitutional right. Therefore, the court denies a certificate of appealability.

**IT IS THEREFORE ORDERED** that defendant Demetrius R. Hargrove's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 432) is denied.

**IT IS FURTHER ORDERED** that the court will not issue a certificate of appealability in this case.

Dated this 9th day of September 2013, at Kansas City, Kansas.

> **s/ Carlos Murguia**
> **CARLOS MURGUIA**
> **United States District Judge**